IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                          CR No. 00-1341 MV

EMMANUEL OHIRI,

    Defendant.

**MEMORANDUM OPINION**

      **THIS MATTER** comes before the Court on Defendant's Objections to Presentence Report and Defendant's Sentencing Memorandum **[Doc. No. 127]**.  In part, the government requested that the Court impose a two-level enhancement under USSG § 3B1.1(c) for Defendant's role as an "organizer, leader, manager and supervisor."  Defendant objected to this adjustment on the grounds that the government had not identified any individual who qualified as a "participant" for purposes of USSG § 3B1.1(c).  The Court, having considered the objections, motion, briefs, relevant law and being otherwise fully informed, **DENIED** the objection at the sentencing hearing. The Court now sets forth the bases for its prior ruling in this Memorandum Opinion.

      To trigger the two-level enhancement under § 3B1.1(c), the government bears the burden of proving the necessary facts by a preponderance of the evidence.  *See United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir. 1999).  When determining whether an enhancement for role is to be applied, a sentencing court may take into account any evidence -- including hearsay from previous proceedings -- so long as that evidence has sufficient indicia of reliability to support its probable

1

accuracy.  *See United States v. Tovar*, 27 F.3d 497 (10th Cir. 1997).  The sentencing court "must make specific findings and advance a factual basis to support an enhancement under § 3B1.1." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1269-70 (10th Cir. 1997).

Section 3B1.1(c) states that a defendant's offense level should be increased two levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." USSG § 3B1.1(c).  In determining whether defendant acted in such a capacity, a court is to consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n.4).  The Tenth Circuit has stated that in weighing these factors, "the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals . . . ." *United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir. 1999) (quoting *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995)).

Defendant did not dispute that he "supervised" Mr. Morris, as required for an enhancement under § 3B1.1(c).  Rather Defendant objected to the adjustment on the grounds that the government had not offered, and could not offer, any evidence that the individual identified as the "participant"-- codefendant John Thomas Morris -- was involved criminally in the particular conduct that is the basis of Defendant's guilty pleas.   However this argument fails because Defendant relies on an overly narrow interpretation of § 3B1.1(c) that is unsupported either by the Sentencing Guidelines or by relevant case law.

The introductory comment to § 3B1.1 states:

The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included in § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.

USSG Ch.3, Pt.B, intro. comment. Section 1B1.3(a) directs a sentencing court to consider, among other things, the following factors in determining whether adjustments under Chapter 3 of the Guidelines apply:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

USSG § 1B1.3(a). The Tenth Circuit has clarified that, in contrast to the Seventh Circuit, this Circuit follows the rule that "'a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments' under Chapter 3, Part B of the sentencing guidelines." *United States v. Harfst*, 168 F.3d 398, 403 (10th Cir. 1999) (quoting *United States v. Saucedo*, 950 F.2d 1508, 1513 (10th Cir. 1991), *overruled in part on other grounds*, *Stinson v. United States*, 508 U.S. 36 (1993)).

In elaborating on the definition of "participant" for § 3B1.1 purposes, the Tenth Circuit has stated that "[a] participant need not be guilty of the offense for which the defendant is sentenced." *United States v. Allemand*, 34 F.3d 923, 931 (10th Cir. 1994) (citation omitted).

"Participants are criminally responsible for the offense if their own criminal conduct made it possible." *Id.* (quotations and citation omitted). In so holding, the Tenth Circuit agreed with the Third Circuit's

3

statement that participants "include persons who are used to facilitate the criminal scheme." *Id.* (quoting *United States v. Inigo,* 925 F.2d 641, 659 (3d Cir. 1991).

Most recently, the Tenth Circuit reiterated that whether the "participant" is responsible for the *same offense* of conviction as defendant is irrelevant to determining applicability of a § 3B1.1(c) enhancement. *See United States v. VanMeter*, 278 F.3d 1156, 1166 (10th Cir. 2002). Instead, the court found that the appropriate inquiry extends to whether defendant had a supervisory role over the participant in *other relevant crimes. Id.*

At the sentencing hearing, this Court found that the government had met its burden in showing that Defendant Ohiri acted as supervisor or manager with regard to Mr. Morris, who was a participant to criminal conduct relevant for purposes of § 3B1.1(c). Defendant pled guilty to three counts, each involving the storage of hazardous waste without a permit, for various lengths of time, starting as early as February 1998 and continuing until as late as July 2001, in violation of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901-6992  While the counts reflect three separate incidents of illegal storage of hazardous waste, each picked up from different sources, the conduct taken together indicates the existence of an underlying criminal scheme in which Defendant knowingly stored hazardous waste in violation of the RCRA's regulatory provisions. Although Mr. Morris pled guilty to having committed different overt criminal acts, both the conduct to which he pled guilty as well as other related conduct in which he engaged, facilitated Defendant's overall criminal scheme to illegally store hazardous waste, thus satisfying the "participant" requirement for § 3B1.1. In addition, the evidence shows that Defendant held supervisory power over Morris during the commission of "other relevant crimes," which the Tenth Circuit has indicated meets the requirements of § 3B1.1. *See VanMeter*, 278 F.3d at 1166.

Defendant was owner and Chief Executive Officer of General Waste Corporation (GWC), the corporate entity through which Defendant and Mr. Morris conducted their illegal activities. Defendant hired Mr. Morris to serve as GWC's operations manager and retained decision-making authority over Morris during the term of Morris's employment.  In a written statement included in his presentence Report, Morris described his relationship to Defendant Ohiri and Morris's own criminal conduct as follows:

> The first two weeks that I joined GWC, Manny Ohiri instructed me to identify, segregate, and label miscellaneous hazardous waste containers.  Those containers had been accumulated by GWC waste management activities, and stored in GWC warehouse prior to my arrival. ... I do not know how long the regulated material GWC accumulated had been in storage prior to my  employment.  My participation included recreating false waste manifests for proper off-site disposal of the waste GWC had accumulated prior to my employment.  Manny Ohiri was aware of this activity.

Furthermore, the evidence in the record is sufficient to support a two-level enhancement for Defendant's organizational, leadership, managerial or supervisory role over Morris even under Defendant's erroneous and cramped reading of § 3B1.1(c).  The Court heard evidence of a close nexus between Morris's criminal conduct and one of the counts to which Defendant pled guilty, involving the illegal storage of 11,000 pounds of waste from Four Corners Drilling Company between February 13, 1998 and May 18, 1999 on GWC property (Count 21).  Mr. Morris had picked up the 11,000 pounds of waste from Four Corners Drilling and brought it back to GWC on February 13, 1998 (see Government Exhibit 45).  It is precisely this waste that the Environmental Protection Agency found to be stored illegally at GWC when it executed a federal search warrant on November 13, 1998, and that is the subject matter of Count 21.  Undoubtedly, Morris's conduct in this matter facilitated the criminal activity for which Defendant was convicted.

5

That Morris was a participant over whom Defendant had the requisite authority for a § 3B1.1 role enhancement is established by the evidence pertaining to Morris's involvement in the illegal storage of hazardous waste from iiná bá, Ltd.  Defendant pled guilty to the illegal storage of hazardous waste from iiná bá between May 1999 and July 2001 (Count 25).  In an interview with inspectors from the New Mexico Environmental Department, Morris stated that he had developed a relationship with iiná bá and was the primary contact person at GWC for business with that company.  On February 6, 1998, Larry Trujillo, Senior Environmental Technician at iiná bá, informed Defendant Ohiri that manifests relating to hazardous waste picked up from iiná bá had been altered improperly.  The dates on which the waste had been picked up had been changed and Mr. Trujillo's signature forged, so that it appeared as though the waste had been stored at GWC facilities within the time limit imposed by federal law, when in fact it was stored for much longer, without legal authorization or proper documentation.

In March 1998, Defendant sent Mr. Trujillo a letter (Government Exhibit 38) indicating that he was aware of Morris's "mishandling" of those documents, that the alterations were made in an effort to feign compliance with the statutory time limit on storage, and that he had taken supervisory control over Mr. Morris's activities at GWC.  The evidence of Morris's tampering with the iiná bá manifests and Defendant's clear supervisory or managerial role over Morris satisfies § 3B1.1's "participant" requirement since it shows Defendant supervised or managed Morris in "other relevant crimes" and that Morris's conduct facilitated Defendant's overall criminal scheme to illegally store hazardous waste.

**CONCLUSION**

At the sentencing hearing conducted on December 18-19, 2002, the Court granted a two-level enhancement for role because Defendant "was an organizer, leader, manager, or supervisor" over participant John Thomas Morris, in criminal activity relevant to the offenses to which Defendant pled guilty. In this Memorandum Opinion, the Court has made findings necessary to support an enhancement for role under USSG § 3B1.1(c).

With a criminal history category I and an offense level of 13, Defendant faced a guideline range of 12 to 18 months, and the Court imposed a sentence of 15 months.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Government:
Laura Fashing

Attorney for Defendant:
John Cline